UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- x

ROMAG FASTENERS, INC.,            :
            :
          Plaintiff,       :
            :
    - against -        :
            :
IRVING BAUER AND G. BAUER, INC.,  :
            :
          Defendants.   :
            :
-------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  November 9, 2011

11 Civ. 3181 (PAC)

OPINION AND ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Romag Fasteners, Inc. ("Romag") seeks to enforce this Court's judgment in

Advanced Magnetic Closures, Inc. v. Rome Fastener Corp., No. 98 Civ. 7766 (PAC)

(hereinafter, the "Prior Action") by piercing Advanced Magnetic Closures, Inc.'s ("AMC")

corporate veil in order to enforce the judgment against Irving Bauer and G. Bauer, Inc.

(collectively, the "Bauer Entities"), and to raise abuse of process claims against the Bauer

Entities.  In the Prior Action, the Court dismissed AMC's patent enforcement claims on a

Fed.R.Civ.P. 50(a) motion for judgment as a matter of law and awarded attorney's fees and

expenses against AMC amounting to $1,509,976.16 (the "Judgment").  As of the date of

Romag's complaint, the Judgment remains unsatisfied.

      The Bauer Entities move to dismiss Romag's complaint pursuant to Rules 12(b)(1),

12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure.  They argue: (1) Romag failed

to join Rings Wire, Inc., an indispensable party, whose presence would destroy diversity

jurisdiction; (2) Romag's veil piercing claims are barred by the doctrines of res judicata and

collateral estoppel, and (3) Romag's abuse of process claim is barred by the statute of

limitations.

For the reasons that follow, the Bauer Entities' motions to dismiss for want of an indispensible party and because res judicata and collateral estoppel bar the veil piercing claim are DENIED; but the motion to dismiss the abuse of process claim is GRANTED because that claim is barred by the statute of limitations.

## BACKGROUND

On October 30, 1998, in the Prior Action, AMC alleged that Romag, Rome Fastener Corp., Rome Fastener Sales Corp., and Rings Wire, Inc. had infringed AMC's U.S. Patent No. 5,572,773 (the "'773 patent"). (Compl. ¶ 23.) After almost a decade of litigation, the Prior Action proceeded to trial on November 5, 2007. On November 7, 2007, at the close of AMC's evidence, this Court granted the defendants' motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). (Id. ¶ 25.)

On July 17, 2008, the Court held AMC's '773 patent unenforceable for inequitable conduct. The Court found that while the '773 patent application contained numerous representations indicating Bauer was the first and sole inventor of the hollow rivet magnetic snap, that the evidence before the Court "convinced [it] beyond a shadow of a doubt that Bauer could not be the inventor of the '773 [patent] snap." Advanced Magnetic Closures, Inc., 2008 WL 2787981, at *5-8. The Court found "Bauer's testimony regarding his purported invention completely incredible" and noted that "[t]here is absolutely no rational explanation for how Bauer could invent something when he admittedly knew nothing about either patents or snaps, especially when he lacked any commercial motivation to invent at the time." Id. at *8-9. The Court then found that "several litigation decisions made by AMC and its counsel compel the determination that this case is extraordinary and attorney fees are merited." Id. at *11. The Court explained its reasoning for awarding attorney's fees as follows:

> Bauer made a strategic business decision to preserve his economic investment in the magnetic snap industry, concealed the true identity of the ′773 snap inventor, and used AMC to bully the handbag industry with a sham patent. When one of AMC's targets finally stood up and challenged the bona fides of the ′773 Patent, AMC  stubbornly persisted in litigation for almost ten years, burdening three separate district court judges with complex scientific arguments and concepts. Once engaged, AMC routinely obscured the origins of key documentary evidence and concealed that its expert's analysis was without foundation. On the eve of trial, AMC was forced to withdraw the expert on whom it unjustifiably and exclusively relied for more than six years, after it became obvious that his opinion controverted both scientific evidence and its key argument at trial. In a brazen demonstration of willfulness, AMC proceeded to trial without an expert, empanelling a jury for three days without even the remotest possibility of success on its infringement claim. In short, AMC's infringement claim was a colossal waste of time for everyone involved and it would be unfair to burden Romag with the costs of litigating this claim.

Id. at *15.  The Court awarded attorney's fees and expenses against AMC in the amount of $1,509,976.16, plus $159 per day payable after October 14, 2008.[1]  On June 10, 2010, the Federal Circuit Court affirmed the ruling and award in relevant part (hereinafter, the "Appeal").  See Advanced Magnetic Closures, Inc. v. Rome Fastener Corp., 607 F.3d 817 (Fed. Cir. 2010).

As of May 10, 2011, in excess of $670,000, plus post-judgment interests from March 19, 2009, remains outstanding on the Judgment.  (Compl. ¶ 29.)  AMC has not paid any portion of the Judgment, and Romag believes it has no assets with which to do so.  (Id.)

Defendant Irving Bauer, also known as Gabriel Bauer, is AMC's owner and President, as well as its sole stockholder/officer, and sole employee.  (Id. ¶¶ 3, 4, 31(d).)  Mr. Bauer is also the owner and President of Defendant G. Bauer, Inc.—his primary operating vehicle— that, among other things, funds AMC.  (Id. ¶¶ 31, 31(a), 31(d).)

---

[1]  The Court's July 17, 2008 opinion concluded that attorney's fees and expenses would be awarded. The specific amounts to be awarded were contained in an amended judgment issued by this Court on November 10, 2008.

On May 10, 2011, Romag filed the instant action to: (1) pierce AMC's corporate veil in order to hold the Bauer Entities liable for the unsatisfied portion of the Judgment, and (2) bring abuse of process claims against the Bauer Entities for causing process to issue in the Prior Action and Appeal.

## LEGAL STANDARD

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the Court may refer to evidence outside of the pleadings including "sworn affidavits from both parties, correspondence between the parties and other relevant documents." King's Gym Complex, Inc. v. Philadelphia Indem. Ins. Co., 314 Fed. App'x 342, 343 (2d Cir. 2008) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000)).

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court assumes all facts alleged in the complaint to be true, and draws all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

The Court may also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Dunn v. Std. Bank London Ltd., No. 05 CIV. 2749 (DLC), 2006 U.S. Dist. LEXIS 3115, at *7 (S.D.N.Y. Jan. 30, 2006) (discussing materials that can be considered by a court in analyzing a Fed.R.Civ.P. 12(b)(7) motion to dismiss) (quoting Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

## DISCUSSION

*A. Indispensible Party*

The Bauer Entities argue that Rings Wire, Inc., which co-holds the Judgment against AMC, is an indispensable party to this action under Fed.R.Civ.P. 19, and that adding Rings Wire, Inc., a New York corporation, destroys diversity jurisdiction.

4

There is a two-part test to determine whether the Court must dismiss an action for failure to join an indispensible party under Rule 19:  First, the Court must determine whether an absent party qualifies as a "necessary" party under Rule 19(a).  <u>Viacom Intern., Inc. v. Kearney</u>, 212 F.3d 721, 724-25 (2d Cir. 2000).  If the Court determines that the party is not necessary, then the Court need not consider whether the party's absence warrants dismissal.  <u>Id.</u>  On the other hand, if "the court makes a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible" then the Court must determine whether the party is "indispensable," such that the Court should not proceed in equity and good conscience without the party.  <u>Id.</u>

A.  <u>The Necessity and Feasibility of Joining Rings Wire Inc.</u>

Rule 19(a)(1) provides that the absent party must be joined, if feasible, where:

> (A) in the person's absence the court cannot accord complete relief among existing parties; or (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

"If the court determines that any of the criteria set forth in Rule 19(a) is met," then the absent party is necessary and must be joined, if feasible, and if not feasible, the Court must proceed to the second prong of the test.  <u>See</u> <u>Johnson v. Smithsonian Inst.,</u> 189 F.3d 180, 188 (2d Cir. 1999).

The Bauer Entities argue that as a co-obligee, holding the same rights as Romag under the terms of the Judgment, Rings Wire, Inc. is a necessary party to this action.  (Def. Br. 6-7.) They argue that if Rings Wire, Inc. is not joined, Mr. Bauer could face multiple enforcement

actions—in state and federal court—on the same legal theories.  (Id. 7.)  The Bauer Entities do not specify which of the Rule 19(a) criteria they rely upon.

Romag argues that the Bauer Entities have not satisfied any of the Rule 19(a) criteria. (Pl. Opp. 7-13).  With respect to Rule 19(a)(1)(A), the Court is only concerned with whether it can afford relief between the existing parties—Romag and the Bauer Entities.  See MasterCard Intern. Inc. v. Visa Intern. Service Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006).  In the Prior Action it was Romag—not Rings Wire, Inc.—that incurred all of the expenses, including legal fees, and thus it is Romag—not Rings Wire, Inc.—that has an interest in enforcing the Judgment here.  (Reiter Decl. 1.)  While the Bauer Entities note that joint obligees "usually have been held indispensable parties," Rule 19 "give[s] the court the flexibility to allow an action to go forward without a joint obligee when no prejudice would result either to the parties or to the absentee and effective relief can be granted."  C. Wright & A. Miller, Federal Practice & Procedure § 1613 at 181-82 (3d ed. 2011).  The Court finds that it can provide complete relief between the parties by deciding whether AMC's veil can be pierced so that the Judgment can be enforced against the Bauer Entities.  The Bauer Entities will not likely be prejudiced by allowing Romag, the party that incurred the litigation expenses, to seek to pierce AMC's corporate veil without joining Rings Wire, Inc., which has no interest in this action.  Rings Wire, Inc., therefore, is not a necessary party.   See Staten Island Rapid Transit Ry. Co. v. S.T.G. Constr. Co., 421 F.2d 53, 58 & n.6 (2d Cir. 1970), cert. denied, 398 U.S. 951 (finding that the Government, which incurred some of the costs that plaintiff sought from defendants, was not a necessary party under Rule 19 because the plaintiff would have to account to the Government for recovery it obtained, the defendants were unlikely to be sued independently by the Government, and the Court could afford complete relief between the parties).

6

The Bauer Entities argument that if Rings Wire, Inc. is not joined it could face multiple lawsuits is to no avail because Rule 19(a)(1)(B)(i) and Rule 19(a)(1)(B)(ii) "are contingent ... upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action." ConnTech Dev. Co. v. Univ. of Connecticut Educ. Props., Inc., 102 F.3d 677, 682-83 (2d Cir. 1996) (quoting Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir.1983)); see also Cont'l Cas. Co. v. Am. Home Assur. Co., No. 05 Civ. 7874(LTS)(JCF), 2008 WL 1752231, at *4 (S.D.N.Y. 2008). The President of Rings Wire, Inc., Howard Reiter, submitted a declaration stating that Rings Wire, Inc. "has no interest in enforcing the Judgment" because its products were not involved in the Prior Action, and it bore none of the litigation expenses. (Reiter Oct. 2, 2011 Decl. 1-2.) Since the "non-party has no interest in the outcome of a matter, there cannot be a ''substantial risk' that a party will incur multiple or inconsistent obligations by virtue of the failure to join' that non-party. Greenwich Life Settlements, Inc. v. ViaSource Funding Group, LLC  742 F.Supp.2d 446, 456-457 (S.D.N.Y. 2010) (quoting Yonofsky v. Wernick, 362 F.Supp. 1005, 1024 (D.C.N.Y. 1973)). In light of Rings Wire, Inc.'s express disclaimer of any interest in enforcing the Judgment, Rule 19(a)(1)(B) cannot be used by the Bauer Entities to argue that Rings Wire, Inc. is a necessary party to this action. ConnTech Dev. Co., 102 F.3d at 683 (finding that because "Connecticut has clearly declined to claim an interest in the subject matter of this dispute," the defendant cannot use this prong of 19(a) to claim Connecticut is a necessary party).

Having determined that Rings Wire, Inc. is not a necessary party under any of the Rule 19(a) criteria, the Court need not consider whether the party's absence warrants dismissal. See Viacom Intern., Inc. v. Kearney, 212 F.3d 721, 724-25 (2d Cir. 2000).

*B. Doctrines of Res Judicata and Collateral Estoppel*

The Bauer Entities argue that Romag's veil piercing claim is barred under the doctrines of collateral estoppels and res judicata. (Def. Br. 8-11.) While the Bauer Entities appear to be basing their arguments on New York law, whether "a prior federal court judgment has preclusive effect in a subsequent action is a question of federal common law." NML Capital, Ltd. v. Banco Cent. De La Republica Arg., 652 F.3d 172, 184 (2d Cir. 2011). There is, however, "no discernible difference between federal and New York law concerning res judicata and collateral estoppel." Algonquin Power Income Fund v. Christine Falls of New York, 362 Fed. App'x 151, 154 (2d Cir. 2010) (citing Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir.2002)).

To prove that a claim is precluded by res judicata "'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284–85 (2d Cir.2000)).

To prove an issue is precluded by collateral estoppel a party must show: "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir.2006) (quoting Purdy v. Zeldes, 337 F.3d 253, 258 & n. 5 (2d Cir.2003)).

A review of the record in the Prior Action, and specifically a review of an oral argument before the Court on February 13, 2008, and the Court's opinion and order on July 17,

2008, is necessary to determine whether the veil piercing issue was fully, fairly, and actually litigated and decided in the Prior Action.  At the February 13, 2008 hearing, the following discussions took place:

> COURT:  If I were to . . . enter a judgment . . . against Advanced Magnetic Closures, it wouldn't do you any good, would it?
>
> MR. ZIVIN (for Romag): I suspect they would close up the company.
>
> COURT: And what's to stop you from piercing the corporate veil and going after G. Bauer and Mr. Bauer?
>
> MR. ZIVIN: That's an interesting question.  I did do some more research in view of Mr. Bauer's comment through separate counsel.  It's a procedure that I'm not personally familiar with.  It's a state court procedure, actually, and I gather what we need to do, if you do grant a judgment and it's not paid by someone, is to bring a supplementary proceeding in this court under a section of the CPLR to try to pierce the corporate veil, take discovery on that limited issue.
>
> COURT: On the record that I have before me, couldn't I make that finding?
>
> MR. ZIVIN:  I think you could, but it's – I think you could, because Mr. Bauer said that the company had no assets, it had no business, never had any business, it was formed just for the purpose of bringing this case.  It's not just a question of Mr. Bauer being the sole owner or even the sole officer, but it just wasn't even a company.  Didn't do anything. . . .

(Feb. 13, 2008 Transcript ("Tr.") 13-15)

> COURT: I don't want you to think that I'm drawing adverse inferences here, Mr. Crisona, but what do you say about Advanced Magnetic Closures, Inc. being a shell, and if I do decide against you, going after [ ] G. Bauer and Mr. Bauer?
>
> MR. CRISONA (Attorney for AMC): I don't represent [  ] G. Bauer and Mr. Bauer.  All I can say, I don't think the record supports without further evidence and opportunities for discovery, etc., etc. simply piercing the corporate veil and the current record and going after the individuals.  But let me stress, I don't represent them.

(Id. 22-23.)

In the Court's July 17, 2008 opinion, the Court noted Romag's request that the Bauer entities be held jointly and severally liable for any award imposed, but observed that Romag devoted less than one page to its argument, and did not specify a legal theory.  <u>Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.</u>, et al., No. 98 Civ. 7766 (PAC), 2008 WL 2787981, at *18 & n.25 (S.D.N.Y. July 17, 2008).  The Court interpreted Romag's argument as raising a veil piercing claim, but declined to rule on whether the Bauer Entities were jointly and severally liable, based on "procedural and evidentiary shortcomings."  <u>Id.</u> at 18.  Procedurally, Irving Bauer and G. Bauer, Inc. were not parties to the Prior Action, which raised concerns because "due process affords non-parties an opportunity to formally contest personal liability before the imposition of judgment upon them."  <u>Id.</u> (citing <u>Nelson v. Adams USA, Inc.</u>, 529 U.S. 460, 463 (2000)).  From an evidentiary standpoint, the Court found that there was not enough evidence—only Romag's cursory contention—to find the Bauer Entities jointly and severally liable.  <u>Id.</u>  The Court denied Romag's request for leave to amend its pleading—to add the Bauer Entities as parties—at that "extremely late hour."  <u>Id.</u>  The Court did not, however, address whether Romag could, as its counsel stated, bring a supplementary proceeding at a later point to pierce the corporate veil.  <u>Id.</u>

The Bauer Entities argue that the factual predicate to assert an alter ego claim was known from the inception of the litigation, (Def. Reply 2. (citing June 30, 2000 transcript, Appendix A, 17)), and emphasize that it was Romag's counsel who told the Court that the record was sufficient for the Court to decide the issue (<u>id.</u>).  The Bauer Entities claim that the veil piercing issue was fully addressed in the prior hearing and in

the Court's opinion, which denied Romag's claim without leave to amend, renew, or otherwise sue again.  (Def. Br. 10.)

Romag argues that piercing the veil was not fully and fairly litigated in the Prior Action and notes that both parties indicated additional discovery was needed.  (Pl. Opp. 14-15.)  Romag argues that the procedural and evidentiary shortcomings, noted by the Court, prevented the Court from actually deciding the issue at that time.  (Id.)  Nor did the Court preclude Romag from instituting a separate action against the Bauer Entities, and in fact, later authorized Romag to depose Irving Bauer and G. Bauer, Inc., in supplemental proceedings after trial.  (See No. 98 Civ. 7766, Dkt. No. 228, January 7, 2010 Order).

The Court notes that "parties regularly seek to enforce judgments awarded in one proceeding via a corporate veil-piercing theory in a subsequent proceeding."  Careccia v. Macrae, No. 05 Cv 1628(ARR), 2005 WL 1711156, at *4 (E.D.N.Y. July 19, 2005) (collecting cases).  The Bauer Entities attempts to apply res judicata or collateral estoppel to the Prior Action are rejected.

Res judicata is not applicable because the Prior Action did not involve an adjudication of a veil piercing claim on the merits.  The issues, facts to be proved, and law applied in the Prior Action, which related to AMC's patent enforcement claims and a resulting litigation misconduct Judgment, differ substantially from the issues, facts to be proved, and law applied in the instant veil piercing case.  See RENP Corp. v. Embassy Holding Co., 644 N.Y.S.2d 567 (N.Y. App. Div. 2d Dep't1996) (holding that the differences between a veil piercing action and the underlying contract action—in terms of the issues, facts to be proved, relief sought, and law

applied—rendered res judicata inapplicable); see also Rebh v. Rotterdam Ventures Inc., 252
A.D.2d 609, 610 (N.Y. App. Div. 3rd Dep't 1998) (same).

      While Romag raised the possibility of holding the Bauer Entities jointly and severally
liable in the Prior Action, the Court found that it was not in a position to rule on the veil-
piercing issue at that time.  See Rebh, 252 A.D.2d at 610 (holding res judicata did not bar
plaintiff's veil piercing action, even though the defendant was named in, but then let out of,
plaintiff's original action, and the issue of piercing the corporate veil was briefed in the
original action, because the issue was not pled in the complaint or directly addressed and
decided by the court).  The fact that Romag's counsel argued that the Court could rule on the
evidence before it is not determinative, because the Court found that it did not have sufficient
evidence and in fact did not rule.  See Advanced Magnetic Closures, Inc., 2008 WL 2787981,
at *18.  The prior procedural and evidentiary concerns that prevented the Court from ruling in
the Prior Action will be addressed in the current litigation so that the Court may adjudicate the
merits of Romag's veil piercing claim.  See First Capital Asset Mgmt v. N.A. Partners, 260
A.D.2d 179, 181 (N.Y. App. Div. 1st Dep't 1999) (holding that res judicata did not bar a veil
piercing claim against a defendant who was dismissed from the prior action based on a
"finding that [defendant] was not personally liable for the purchase price under the terms of the
stock purchase agreement" so long as the "'necessary elements of proof and evidence required
to sustain recovery [on a veil piercing claim] vary materially.") (quoting Jefferson Towers, Inc.
v. Pub. Serv. Mut. Ins. Co., 195 A.D.2d 311, 313 (N.Y. App. Div. 1st Dep't 1993)).

      The Bauer Entities collateral estoppel argument fails for the same reason:  the
veil piercing issue was not actually litigated and decided in the Prior Action.  See
Rebh, 252 A.D.2d at 610 (holding that since the issue was never "actually determined

in the prior proceeding . . . the doctrine of collateral estoppel does not prevent [the

court's] consideration at this juncture"); Careccia v. Macrae, No. 05 Cv 1628(ARR),

2005 WL 1711156, at *4 (E.D.N.Y. July 19, 2005) (finding that any issues of fact

necessarily decided in the prior contract action "are not identical to the issues that are

critical in the instant [veil piercing] case . . . . [d]ismissal is therefore not warranted on

the basis of collateral estoppel.").

## C.   Statute of Limitations on an Abuse of Process Claim

Romag claims that each of the Bauer Entities abused process in prosecuting the Prior

Action and Appeal.  The Bauer Entities argue that Romag's abuse of process claim fails

because: (1) the claim is barred by the one-year statute of limitations and (2) the defense of res

judicata bars any claim.  (Defs. Br. 11-12.)  Romag counters by arguing a three-year statute of

limitations governs its abuse of process claims, and that, in any event, its claims are timely

because it commenced the current action within one year of the conclusion of the Appeal.  (Pl.

Opp. 16-20.)

There is a split of authority as to whether an abuse of process claim is subject to New

York's one-year statute of limitations for certain intentional torts enumerated in N.Y. C.P.L.R.

§ 215(3) or a three-year statute of limitations for torts involving injury to persons or property

under N.Y. C.P.L.R. § 214(5).[2]  The torts enumerated in N.Y. C.P.L.R. § 215(3) include:

assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing

special damages, or a violation of the right of privacy under section fifty-one of the civil rights

law.  While abuse of process is not included in N.Y. C.P.L.R. § 215(3), it is an intentional tort,

---

[2]  N.Y. C.P.L.R. § 214(5) provides a three year statute for "an action to recover damages for a personal
injury except as provided in sections 214-b, 214-c and 215."  N.Y. C.P.L.R. § 214-b deals with
"Agent Orange."  N.Y. C.P.L.R. § 214-c deals with latent injuries attributable to exposure to
substances.

akin to those enumerated and it is not like the more general statute which provides three years to bring actions for "personal injuries."

Each of the four New York Appellate Divisions has held that a "one-year statute of limitations . . . governs a cause of action for abuse of process.'" 10 Ellicott Square Court Corp. v. Violet Realty, Inc., 81 A.D.3d 1366, 1368-1369 (N.Y. App. Div. 4th Dep't 2011); Dobies v. Brefka, 694 N.Y.S.2d 499, 501 (N.Y. App. Div. 3rd Dep't 1999) (applying a one-year statute of limitations to an abuse of process claim); Bittner v. Cummings, 591 N.Y.S.2d 429, 430 (N.Y. App. Div. 2d Dep't 1992) ("Abuse of process and malicious prosecution are both intentional torts which are governed by CPLR 215, the one-year statute of limitations."); Gallagher v. Directors Guild of Am., Inc., 533 N.Y.S.2d 863, 864-65 (N.Y. App. Div. 1st Dep't 1988) (holding that an abuse of process claim is subject to the one-year limitations period because the "operative distinction between the sort of causes of action governed by CPLR 215 and those within the scope of CPLR 214 is whether the particular claim involved is for an intentional tort or a tort sounding in negligence").

An abuse of process claim begins to accrue "'when plaintiff [ ] first become[s ] entitled to maintain the action[, ]i.e., when there is a determination favorable to plaintiff[s], notwithstanding the pendency of an appeal.'" 10 Ellicott Square Court, 81 A.D.3d at 1368-1369 (quoting Lombardo v County of Nassau, 791 N.Y.S.2d 292 (N.Y. Sup. Ct. Nassau Co. 2004)). Romag argues that its claims are timely even under a one-year statute of limitations because the instant action, filed on May 5, 2011, was brought within one year of the conclusion of the Appeal, on June 11, 2010. (Pl. Opp. 19 & n.6.) An appeal, however, does not toll the statute of limitations on an abuse of process claim. See id.; see also Reed Co. v. International Container Corp., 43 F.Supp. 644, 645 (S.D.N.Y.1942) ("Under [New York] law, the cause of

14

action accrues when the plaintiff first becomes entitled to maintain the action. . . . regardless of

whether an appeal from the dismissal was taken or not"). An abuse of process claim began to

accrue when this Court dismissed the Prior Action, on July 17, 2008. Romag had to file its

claim for abuse of process claim by July 17, 2009. It failed to do so. Romag's abuse of

process claims were not filed until May 5, 2011, and are time-barred.

## CONCLUSION

For the reasons above, the Bauer Entities' motion to dismiss is GRANTED IN PART

and DENIED IN PART. Specifically, the Court grants the Bauer Entities' motion to dismiss

Romag's abuse of process claims, but denies their motion to dismiss in all other respects. The

clerk is directed to terminate the motion at Docket No. 15.

The parties are directed to meet and confer and to prepare a Civil Case Management

Plan. The parties should submit the agreed upon plan in advance of the Civil Case

Management Conference scheduled for Thursday, December 1, 2011, at 4:00 p.m., in

Courtroom 20–C.

Dated: New York, New York
       November 9, 2011

SO ORDERED

PAUL A. CROTTY
United States District Judge

15